NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ASG SOLUTIONS CORP., DBA AMERICAN SYSTEMS GROUP,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1755

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-01029-RAH, Judge Richard A. Hertling.

---

Decided: December 15, 2025

---

DAVID DEMIAN, Finch, Thornton & Baird, LLP, San Diego, CA, argued for plaintiff-appellant.

SHERYL L. FLOYD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before CHEN, BRYSON, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

This case arises from a contract between a private contractor and the United States Department of the Navy ("Navy"). The contractor complains that the Navy improperly terminated the contract for default and raises a number of claims of improper conduct by the Navy that led to that termination.

The contractor sought review of the termination in the Court of Federal Claims ("the Claims Court"), which granted summary judgment for the government in a thorough opinion that addressed each of the claims raised by the contractor. *See ASG Sols. Corp. v. United States*, 170 Fed. Cl. 485 (2024). We agree with the Claims Court's analysis and accordingly affirm.

I

The contract in this case was an Indefinite Delivery Indefinite Quantity task order contract under which the contractor, ASG Solutions Corporation, doing business as American Systems Group ("ASG") agreed to provide engineering and program-management services to support design and construction operations at Naval Air Station Jacksonville. *Id.* at 489; J.A. 2957–3022. The government interpreted the task order as requiring the contractor to assemble a multi-disciplinary team of at least 20 professionals who would provide technical support services on demand relating to design and construction work at the Naval Air Station.

Despite the terms of the agreement, ASG never succeeded in assembling a team of 20 or more professionals who met the qualifications set forth in the contract. For that reason, the Navy terminated the contract for default halfway through the one-year contract period, over ASG's strong objection. J.A. 4556–61.

In its challenge to the termination, ASG raises a number of issues, the principal ones of which are (1) that the Navy misconstrued the contract by interpreting it to require ASG to assemble and maintain a group of at least 20 professionals even at times when the Navy had no tasks for the group to perform; (2) that the contract was invalid because it was an unlawful personal services contract, prohibited by section 37.104 of the Federal Acquisition Regulation ("FAR"); and (3) that the default termination was unjustified and was merely a pretext by which the Navy sought to rid itself of ASG as a contractor.

## II

## A

The government argues that the plain terms of the contract required ASG to provide the Navy with a team of 20 facilities technical experts to advise and assist on projects at the Naval Air Station as they arose, and that ASG never approached having that number of technical experts available to perform services for the Navy. ASG, on the other hand, argues that the contract did not require it to have a certain number of professionals on staff, but only required it to assemble a qualified team to perform each task after the Navy assigned it a specific project under the contract.

The Claims Court found the government's interpretation of the contract to be more reasonable, as do we. *See ASG*, 170 Fed. Cl. at 498–502. Although the contract gave ASG the right to determine "the precise labor and staffing mix" among professionals selected to provide the contractual services, the contract required ASG to provide at least 20 professionals (or the equivalent) throughout the contract period, not simply to make professionals available when and as needed for the tasks assigned from time to time under the contract. J.A. 2966. Section A.2 of the solicitation states that "[t]he staff of twenty (20) professionals is base/minimum level of service," J.A. 2959; and section H.8 states that "any time there is a vacancy within

the Contractor's team (i.e. all twenty (20) positions are not filled), the Government will be entitled to immediate replacement . . . or to a unit price reduction in payment," J.A. 2988.

Other evidence in the case is consistent with the requirement that the contractor have an assembled team of 20 professionals at all times. That evidence included ASG's bid, which referred to "[o]ur proposed 20 FTE All-Senior Team" and outlined the backgrounds of the 20 team members. J.A. 3027; *see also* J.A. 2999 (Attachment 2 to section J of the task order outlining the proposed back grounds of 20 team members). ASG subsequently confirmed that it understood that it would be bound by the representations found in its bid. J.A. 3173–74. In addition, section M of the solicitation provided that for the evaluation of proposals, "[t]he team must be composed of twenty (20) professionals including two supervisors." J.A. 3074.

We agree with the Claims Court's conclusion that the government's interpretation of the contract is clearly more reasonable than ASG's. For that reason, we reject ASG's reliance on the doctrine of *contra proferentem*, which calls for construing ambiguous contract terms against the drafter—here, the government.

B

The Claims Court rejected ASG's argument that the contract was an impermissible personal services contract. *ASG*, 170 Fed. Cl. at 504–05. While the contract required ASG to make a number of professionals available to perform tasks for the Navy, it clearly left the responsibility for hiring and supervising those professionals with ASG.

The FAR provision governing personal services contracts defines nonpersonal services contracts as those in which the personnel rendering the services in question are not subject "to the supervision and control usually prevailing in relationships between the Government and its

employees." 48 C.F.R. § 37.101; *see* 48 C.F.R. § 37.104. The contract made clear that the 20 professionals that ASG was committed to making available to do government work would be employees of ASG, not of the government; the contract specifically provided that "[t]he contractor supervises its own team to ensure compliance with this [Performance Work Statement]." J.A. 2968. While the government had the right to review resumes and specify the level of expertise required of those employees, it was not responsible for hiring and firing them or otherwise managing their employment on a day-to-day basis. *See* J.A. 2970 ("Contractor employees performing services under this order will be controlled, directed and supervised at all times by management personnel of the contractor."); *see also* J.A. 2975, 2979–80, 3031–32. The Claims Court was thus clearly correct that the contract was not a personal services contract.

## C

ASG argues that it provided the services for which the government contracted because it stood ready to supply professionals to do whatever tasks the Navy asked it to perform, and that the termination for default was therefore unjustified. The Claims Court rejected that argument on the ground that it was inconsistent with the obligations imposed on ASG by the contract. *ASG*, 170 Fed. Cl. at 505–08. In section F.4 of the contract, ASG agreed that within five days of the contract award it would provide a "[r]esume for each position proposed" to accomplish the tasks falling within the scope of the contract. J.A. 2974–75. ASG failed to deliver those resumes. *See ASG*, 170 Fed. Cl. at 492–93. The contract did not contemplate that ASG would arrange to hire and provide professionals whenever the Navy had a particular task for ASG to perform.

The summary judgment record showed that throughout the contract period, ASG never retained as many as 20 qualified professionals, and for most of that period, it had

far fewer.[1]  Moreover, on several occasions the Navy notified ASG that it was not complying with its responsibilities under the contract, but ASG never brought itself into compliance with the contract's requirements.[2]

We agree with the Claims Court that the government reasonably concluded that ASG had defaulted on the contract, and that the termination for default was not simply a ruse designed to enable the Navy to escape an improvident contract.  Based on that conclusion, the Claims Court properly determined that the government had not breached its covenant of good faith and fair dealing through its actions and communications with ASG.  *See ASG*, 170 Fed. Cl. 505, 508.

ASG has raised several other subsidiary issues in its brief, which the Claims Court addressed in its comprehensive opinion.[3]  None of those issues, however, affect our

---

[1]    The Claims Court held that "ASG materially failed to perform.  It did not provide the required services of assembling a fully staffed team . . . .  As of March 2023, halfway through the contract period, ASG had retained only four employees who reported to work at NAS Jacksonville." *ASG*, 170 Fed. Cl. at 506.

[2]    The Claims Court noted that the Navy sent ASG a "letter of concern" on November 1, 2022; a cure notice on December 5, 2022; and a notice to show cause on January 20, 2023, "based on ASG's failure to comply with its obligations to propose team members meeting the qualifications" required by the contract.  *ASG*, 170 Fed. Cl. at 493.

[3]    ASG contends in passing that the memorandum in which the contracting officer considered seven factors to determine whether to terminate the contract for default (J.A. 4732–44) was inadmissible as hearsay.  Appellant's Br. 50–53.  The memorandum, however, was not considered for the truth of its contents, but only to show that the contracting

confidence that the Claims Court's summary judgment order was correct.

## AFFIRMED

---

officer addressed the factors required by 48 C.F.R. § 49.402-3(f) to be considered before terminating a contract for default. *ASG*, 170 Fed. Cl. at 507–08 & n.8.